UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KAREN R.                                  )<br>        Plaintiff,                        )<br>                                                   )<br>    v.                                             )<br>                                                   )<br>KILOLO KIJAKAZI, Acting Commissioner )<br>of the Social Security Administration,   )<br>        Defendant.                      ) | CAUSE NO.: 3:20-CV-717-JVB |

**OPINION AND ORDER**

Plaintiff Karen R. seeks judicial review of the Social Security Commissioner's decision denying her application for disability insurance benefits and asks this Court to reverse that decision and remand this matter to the agency. For the reasons below, this Court grants Plaintiff's request and reverses the final decision of the Commissioner of Social Security.

**PROCEDURAL BACKGROUND**

In Plaintiff's May 10, 2014 application for benefits, she alleged that she became disabled on May 1, 2014 because of myalgic encephalomyelitis. (AR 216). This application was denied at the administrative level after a hearing before an administrative law judge (ALJ). Plaintiff appealed. The case ultimately returned to the agency after the Social Security Administration's appellate counsel filed an unopposed motion for relief from the judgment in its favor entered at the district court level. (AR 808-09).

While the first case was pending in the court system, Plaintiff filed a second application for benefits on May 21, 2018, which eventually was consolidated with her first application. A different ALJ held a hearing on February 26, 2020. The ALJ issued his partially favorable decision on May 1, 2020, in which he found that Plaintiff has the severe impairments of chronic fatigue

syndrome with mild fibromyalgia component, hypothyroidism, and adjustment disorder with anxiety. He also found that Plaintiff had the residual functional capacity (RFC) to

> perform light work . . . except the claimant can lift and/or carry, push and/or pull 20 pounds occasionally and 10 pounds frequent. She can stand and/or walk 6 hours and sit 6 hours in an 8-hour workday with normal breaks. She can never climb ladders, ropes or scaffolds but can occasionally climb ramps, stairs, balance and stoop, kneel, crouch or crawl. The claimant can have no exposure to unprotected heights or moving mechanical parts. She cannot drive commercially. The claimant can have no exposure to wet, slippery or uneven surfaces. Mentally, she can understand and remember simple instructions and carry out simple tasks with simple work-related decisions and judgments, performing these tasks with adequate pace, persistence and concentration in two-hour segments allowing for normal breaks. She is limited to low stress work such as no assembly lines or hourly quotas, but can meet end of day expectations.

(AR 668). He found that Plaintiff could not perform her past relevant work and was disabled as of July 14, 2017, due to the change of her age category and application of Medical-Vocational Rule 202.06. (AR 675, 678). However, he also found that prior to July 14, 2017, Plaintiff could perform work that existed in significant numbers in the national economy, such as the representative occupations of marker, furniture rental consultant, and cashier II. (AR 676). Plaintiff then filed her complaint, initiating this cause of action.

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**STANDARD OF REVIEW**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla of evidence. *Biestek v. Berryhill*, 138 S.Ct. 1148, 1154 (2019).

**ANALYSIS**

Plaintiff argues that the ALJ improperly applied the treating physician rule, failed to provide a detailed discussion of Plaintiff's statements and third party reports, and erred in not analyzing how much the unskilled light occupational base was eroded by Plaintiff's non-exertional limitations. Errors committed by the ALJ in applying the treating physician rule supply a more than sufficient basis on which to remand this matter.

Under the "treating physician rule," which is found in the version of the regulations that apply to Plaintiff's claim, the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2) (applicable to claims filed before March 27, 2017). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016)

3

(citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)). When an ALJ does not give controlling weight to the opinion of a treating physician, she must weigh the opinion in accordance with the factors in 20 C.F.R. §404.1527. *See* 20 C.F.R. §404.1527(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion."); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2006).

Dr. Lerner was one of Plaintiff's treating physicians; Plaintiff estimated that Dr. Lerner saw her over thirty times. (AR 63-64). On December 12, 2014, Dr. Lerner opined that Plaintiff

> [h]as severe life-altering fatigue requiring large periods of the day lying down. She is incapable of working in any capacity at the present time. She is totally exercise-intolerant. Her 24-hour ECG monitor shows abnormal T waves. She has post-exertional severe malaise. She has markedly elevated Epstein Barr virus EA, both diffuse and restrictive, are positive at 40, negative less than 20, showing abortive lytic replication. She has elevated cytomegalovirus titer of 70, IgG, negative less than 18. She has positive HV6 titer as well at 3.85, positive greater than 1. She is completely disabled at this time. Additionally, I can predict that Karen will not be able to work for the next upcoming year.

(AR 1333). Though the opinions that Plaintiff is disabled and incapable of working in any capacity are issues reserved for the Commissioner, the opinion that Plaintiff's fatigue requires her to lay down for large periods of the day, is totally exercise-intolerant, and has post-exertional severe malaise are opinions that are subject to the treating physician rule. *See* 20 C.F.R.§ 404.1527(d).

The ALJ assigned this opinion "little weight, as it is not consistent with the medical evidence of record up to this point, which showed no weakness." (AR 672). However, Dr. Lerner did not state that Plaintiff was limited due to weakness; he said it was due to fatigue. "Fatigue is a feeling of weariness, tiredness, or lack of energy." *Fatigue*, *MedlinePlus Medical Encyclopedia*, *available at* https://medlineplus.gov/ency/article/003088.htm (last visited Feb. 24, 2022). Weakness, on the other hand, "is reduced strength in one or more muscles." *Weakness*,

4

*MedlinePlus Medical Encyclopedia*, *available at* https://medlineplus.gov/ency/article/003174.htm (last visited Feb. 24, 2022). Lack of evidence of weakness is not inconsistent with an opinion of symptoms due to "severe life-altering fatigue." This conflation of weakness with fatigue was also a stated reason for not giving controlling weight to Dr. Lerner's opinions given on February 4, 2015, and February 5, 2015. (AR 672). The ALJ did not properly apply the treating physician rule, so this matter must be remanded.

After Dr. Lerner died, Plaintiff's care was transferred to Dr. Conley. *See* (AR 600). Dr. Conley opined on September 28, 2016, that Plaintiff had "profound fatigue which would become worse/exacerbated with exertion" and "cognitive dysfunction which also would become worse with exertion." (AR 549). He also indicated: "It must be expressed that any attempt to return her to full-time employment or even meaningful part-time employment at this time more than likely would cause an exacerbation of her illness and therefore would be counterproductive." *Id.* The ALJ again assigned only "little weight" because "the physical examination of the claimant appears to suggest that she was stable," her "neurological examination was within normal limits," "[s]he ambulated appropriately," "[s]he responded to questions appropriately," and "five months prior, the claimant reported that she was slowly improving with the medication." (AR 673).

The ALJ has once again failed to properly apply the treating physician rule. Assuming that the implication is that the reasons provided are inconsistencies between the opinion and the record, that implication is logically incorrect. That she is currently stable (while she is not working) is not inconsistent with the opinion that working a job will exacerbate her symptoms. *See* Social Security Ruling 14-1p, 2014 WL 1371245, *3 (Apr. 3, 2014) (listing, as a symptom of chronic fatigue syndrome, postexertional malaise lasting more than 24 hours). Further, the ALJ does not provide any logical connection between ambulating appropriately and responding to questions

5

appropriately to the conclusion that Dr. Conley's opinion is inconsistent. The same is true for the neurological evaluation. The mere fact that a social security claimant has some normal findings does not preclude the possibility that the claimant has disabling impairments due to other, abnormal findings.

Additionally, it is disingenuous for the ALJ to note Plaintiff's "slow improvement" five months prior to Dr. Conley's opinion but ignore that Plaintiff's next two appointments with Dr. Conley that preceded his September 28, 2016 opinion, in which she reported no improvement and "perhaps is slightly improved but fluctuates considerably." *See* (AR 594-95). There is no clear pattern that Plaintiff was on a path of improvement that would ultimately lead to recovery, and furthermore, it is possible to experience improvement and still have disabling symptoms. *See Dyer v. Berryhill*, 237 F. Supp. 3d 772, 777 (N.D. Ill. 2017) ("So the relevant question is whether, even with some improvement, he was still in too much pain to engage in the prolonged sitting needed to work a sedentary job.").

The ALJ provided only one reason to reject Dr. Conley's January 27, 2017 opinion: "he does not state when the claimant's disability began." (AR 673). At the very least, the ALJ should have considered the opinion of Plaintiff's abilities to be indicative of what she could do on the date the opinion was written. The ALJ appears to be grasping at straws in using this excuse to not assign controlling weight to the opinion. He has identified no lack of evidence supporting the opinion (in fact, Dr. Conley provides such support in the opinion itself) and has not identified any contradictory evidence. The treating physician rule was not applied correctly.

The ALJ rejected Dr. Conley's December 20, 2018, in part due to errors already discussed above, namely conflating fatigue with weakness and assuming that walking normally is inconsistent with chronic fatigue syndrome. The ALJ also cites to findings from Plaintiff's

6

consultative examination, but the consultative examiner concluded that Plaintiff had chronic fatigue syndrome, short attention span, history of arthralgias, history of myalgias, poor concentration, short attention span, memory impairment, and mild cognitive impairment and recommended that she continue treatment. (AR 1369-70). The ALJ appears to think that Plaintiff's ability to do anything (such as "pick up a coin" or "write"), *see* (AR 1369), at one point in time is inconsistent with her treating physician's opinion that she is unable to stand and sit for eight hours, that on bad days she someone else makes food, and that on good days she is able to go grocery shopping but has to rest before she can put those groceries away, (AR 1392). "Different" is not synonymous with "inconsistent." This opinion, too, was not given appropriate evaluation under the treating physician rule.

Not that more is needed to remand this decision, but more errors appear throughout the decision. It appears that the ALJ completely ignored Dr. Conley's opinion dated December 27, 2018. *See* (AR 1389-90). The only reason provided for giving Dr. Kvietkus's January 28, 2020 opinion and Dr. Conley's February 3, 2020 opinion merely "some weight" is that the ALJ had found Plaintiff disabled as of that date (that is, no inconsistency in the record or lack of support was identified). (AR 674). Dr. Thomas's January 26, 2017 opinion was given little weight because he opined that Plaintiff "is prone to good days, followed by bad days, which require her to sleep and rest" both at the time the letter was written and as of Plaintiff's alleged onset date. (AR 1329-30). This is not an inconsistency; a person may experience the same symptoms for a lengthy period of time.

Turning to statements provided by third party non-medical professionals, the ALJ only considered Plaintiff's spouse's statement that Plaintiff's cognition was affected and did not mention that Plaintiff's spouse also identified that Plaintiff's activities on a good day "is great

7

except she is then down for the rest of the day," (AR 300), which is useful information since the ALJ repeatedly mentions various activities that Plaintiff can perform without acknowledging the allegations in the record that these activities completely deplete her energy, which she has difficulty replenishing.

The ALJ states that he considered the Work Activity Questionnaire completed by Plaintiff's former employer and as a result limited plaintiff to simple tasks in a low stress environment. (AR 675). However, the employer stated that Plaintiff was unable to handle "everyday customer issues" that had only "a few steps," so it does not appear that the ALJ actually took the statement seriously. *See* (AR 254-55). The ALJ did not account for the employer's statement that Plaintiff was unable to commit to specific dates or times to work and could only work a few hours per week. (AR 254). The employer also endorsed that if Plaintiff pushed herself 'she would end up sick and miss even more work." (AR 254). There is a significant disconnect between the employer's actual statements in the questionnaire and the ALJ's supposed consideration of it. There is no logical bridge regarding this evidence and the conclusion the ALJ draws from it.

In the interest of judicial economy, the Court will end its analysis of the ALJ's decision here. However, the Court will pause to note that shortly before Plaintiff filed her first application for benefits, the Social Security Administration issued Social Security Ruling 14-1p, which governs the evaluation of cases involving chronic fatigue syndrome. This Ruling notes that postexertional malaise lasting more than 24 hours "may be the most common secondary symptom." Social Security Ruling 14-1p, 2014 WL 1371245, *3 (Apr. 3, 2014) (listing, as a symptom of chronic fatigue syndrome, postexertional malaise lasting more than 24 hours). This

symptom is one that the ALJ seemed unable to understand or, at least, unwilling to credit despite it being consistently alleged throughout the record.

It could be useful for the ALJ on remand to consider not only whether Plaintiff was able to perform a particular task one time at an examination but also what effect the exertion on the date of her examination had—or what effect performing that task at levels required for full time work would have—on her in the days following the exertion. *See* (AR 702 ("I compare it to like taking 10 days to charge a battery to 20 percent and you use a little bit of energy, you're down to zero and it takes another 10 days to even get back up to 20 percent so I, if I do something and go beyond my . . . anaerobic threshold that's what causes the crash to happen and then my body will shut itself down." (Plaintiff's hearing testimony))). Since the CPET test appears to be one of the best tests for determining the functional exercise ability, *see* (AR 674), perhaps the ALJ on remand would benefit from receiving medical opinion evidence as to how Plaintiff's CPET test results may provide insight into her capabilities in the years prior to the testing.

On remand, the Court hopes that the ALJ assigned to this case will also bear in mind that Dr. Conley, Plaintiff's treating physician and an assistant clinical professor of medicine at Michigan State University College of Osteopathic Medicine, provides the following helpful statement: "It is difficult because on the outside this patient looks normal but her blood work and her laboratory testing are significantly abnormal and correspond to the patient's symptomatology." (AR 1332).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief in Support of Reversal or Remand to the Commissioner, **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further

administrative proceedings. The Court **RECOMMENDS** that, on remand, the Social Security Administration assign this case to a different ALJ.

SO ORDERED on February 28, 2022.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT